UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THERESA WATTS,                                    Case No. 1:03-cv-00589
        Plaintiff,                                Litkovitz, M.J.


        vs.


UNITED PARCEL SERVICE,                            **ORDER**
        Defendant.


        This matter is before the Court upon the following motions: (1) plaintiff Theresa Watts's

motion *in limine* regarding Exhibit 2 (Doc. 251) and a memorandum in opposition filed by

defendant United Parcel Service (UPS) (Doc. 253); (2) defendant UPS's motion *in limine* (Doc.

252) and plaintiff Watts's response in opposition to the motion *in limine* (Doc. 257); (3)

defendant's motion to strike as untimely plaintiff's motion *in limine* and response to defendant's

motion *in limine* (Doc. 260); (4) plaintiff's motion *in limine* relating to grievance proceedings

(Doc. 258) and defendant's memorandum in opposition (Doc. 266); and (5) plaintiff's motion for

a punitive damages instruction (Doc. 256) and defendant's memorandum in opposition (Doc.

262).

        **I.  UPS's motion to strike (Doc. 260)**

        Defendant UPS moves to strike plaintiff's second motion *in limine* (Doc. 258) and

plaintiff's response in opposition to defendant's motion *in limine* (Doc. 257) as untimely.

Plaintiff filed the second motion *in limine* and the opposing memorandum shortly after this

matter was reassigned to the undersigned for all further proceedings.  (Doc. 254).  Full briefing

of the pending motions and disputed evidentiary matters is helpful to a complete understanding

of the issues involved in this case, which has a lengthy procedural history.  Accordingly,

defendant's motion to strike is DENIED.

**II. Motion *in limine* standard**

The Court has the discretion to rule on an evidentiary motion *in limine* pursuant "to the

district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S.

38, 41 n.4 (1984).  "The purpose of a motion *in limine* is to allow the Court to rule on issues

pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and

expeditious trial."  *Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 5050585, at *1 (S.D.

Ohio Nov. 20, 2008) (citing *Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp.2d 844, 846 (N.D. Ohio

2004) (internal citations omitted)).  *See also Tuttle v. Tyco Electronics Installation Services, Inc*.,

No. 2:06-cv-581, 2008 WL 343178, at *1 (S.D. Ohio Feb. 7, 2008).

A party seeking to exclude evidence on a motion *in limine* must demonstrate that the

evidence is clearly inadmissible on all potential grounds.  *See Ind. Ins. Co.*, 326 F. Supp.2d at

846; *English Woods Civic Ass'n/Resident Cmty. Council v. Cincinnati Metro. Hous. Auth*., No.

1:03-cv-186, 2004 WL 6043508, at *1 (S.D. Ohio Nov. 23, 2004) (a motion *in limine* should be

granted only where evidence "is clearly inadmissible for any purpose") (citation omitted); *cf.*

*Luce*, 469 U.S. at 41.  "Unless evidence meets this high standard, evidentiary rulings should be

deferred until trial so that questions of foundation, relevancy and potential prejudice may be

resolved in proper context."  *Indiana Ins. Co.,* 326 F. Supp.2d at 846.

If the Court denies a motion *in limine*, the evidence sought to be excluded by the motion

will not necessarily be admitted at trial.  *Id*.  The Court will consider objections raised at trial,

even if the objection falls within the scope of a motion *in limine* that has been denied.  *Id*. at 846-

47 (citing *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989) (citing *Luce,* 469 U.S. at

41)).  The trial judge, in the exercise of his or her sound discretion, is free to alter a previous *in limine* ruling at trial.  *Luce*, 469 U.S. at 41-42.  *See also United States v. Hurd*, 7 F.3d 236, 1993 WL 389944, at *3 (6th Cir. 1993) (table) (a ruling on a motion *in limine* is essentially an advisory ruling which the trial court is permitted to change during the trial).

A motion *in limine* that seeks to exclude broad categories of evidence should rarely be granted.  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  The better practice is to deal with questions of admissibility of evidence as they arise at trial.  *Id.  See also SPX Corp. v. Bartec USA,* No. 06-14888, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008) ("Normally, motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.").  A motion *in limine* is meant to address evidentiary questions and is not an appropriate device for resolving substantive issues, nor a substitute for summary judgment.  *Tuttle*, No. 2:06-cv-581, 2008 WL 343178, at *5 (citations omitted).  *See also ABC Beverage Corp. & Subsidiaries v. United States,* No. 1:07-cv-051, 2008 WL 5424174, at *2 (W.D. Mich. Dec. 4, 2008) (noting that motions *in limine* are not "substitutes for dispositive motions") (citations omitted).

The undersigned's rulings on the parties' motions *in limine* are informed by the prior evidentiary rulings that have been issued in this case and by the findings of the judges who have presided over the trial of this case on three prior occasions.  The undersigned is generally bound by these prior rulings pursuant to the law of the case doctrine.  The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Scott v. Churchill,* 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)).  The doctrine precludes a court from reconsidering issues "decided at an early stage of the litigation, either

3

explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Engineering Co.,* 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.,* 865 F.2d 761, 766 (6th Cir. 1989)).  The doctrine applies equally to the decisions issued by coordinate courts in the same case and to the court's own decisions. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816 (1988).

"Law of the case directs a court's discretion, it does not limit the tribunal's power." *Association of Frigidaire Model Makers v. General Motors Corp.,* 51 F.3d 271, 1995 WL 141344, at *4 (6th Cir. March 31, 1995) (table) (quoting *Arizona,* 460 U.S. at 618); *see also Gillig v. Advanced Cardiovascular Sys., Inc.,* 67 F.3d 586, 589-90 (6th Cir. 1995).  Nonetheless, although the doctrine does not foreclose a district court from reconsidering its prejudgment orders, "it does cast an air of caution on such an exercise by a judicial officer." *Waste Mgmt. of Ohio, Inc. v. City of Dayton,* 169 F. App'x 976, 985 (6th Cir. 2006) (quoting *Gillig,* 67 F.3d at 589-90).  While a court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," the Supreme Court has cautioned that "as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Christianson,* 486 U.S. at 817. As recognized by the Sixth Circuit: "It would be utterly destructive . . . if each successive decision resulted in the reconsideration of every previous one, and a sequence of decisions in the same case based on different views of overlapping issues of law would likely result in an internally inconsistent judgment.  To avoid the horns of this dilemma, it is the practice to treat each successive decision as establishing the law of the case and depart from it only for convincing reasons." *Waste Mgmt. of Ohio, Inc.*, 169 F. App'x at 985 (quoting *Moore's Federal Practice*).

4

The mandate rule is a specific application of the law-of-the-case doctrine.  *Id*. at 986 (citing *Scott,* 377 F.3d at 570).  "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals."  *Id*.  Although the same court has the discretion to revisit issues previously decided by it, the same is not true when an appellate court has determined an issue of law.  *Id.*  "When a superior court determines the law of the case and issues its mandate, a lower court is not free to depart from it."  *Id.* (citing *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506 (11th Cir. 1987)).  The trial court must "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces."  *Westside Mothers v. Olszewski,* 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Brunet v. City of Columbus,* 58 F.3d 251, 254 (6th Cir. 1995)).  There are narrow grounds for departure from the general rule that the lower court is bound by the higher court's decisions, including when the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.  *Waste Mgmt. of Ohio, Inc*., 169 F. App'x at 987 (citing *McIlravy v. Kerr-McGee Coal Corp*., 204 F.3d 1031, 1035 (10th Cir. 2000) (internal citations omitted)).

### III.  Plaintiff's motion *in limine* regarding Plaintiff's Exhibit 2 (Doc. 251)

Plaintiff Watts seeks a ruling in advance of trial that she be permitted to publish Plaintiff's Exhibit 2 to the jury during the trial of this matter.  Plaintiff has attached Exhibit 2 to her motion *in limine* as Exhibit A.  She describes Exhibit 2 as a purported "written iteration of UPS' policy governing its Temporary Alternative Work program ('TAW')."  (Doc. 251 at 2).  Plaintiff states that Exhibit 2 was admitted at the conclusion of the February 2011 trial of this matter over defendant's objection, and she alleges it therefore appears the admissibility of

5

Exhibit 2 has been resolved in her favor. (*Id*.). Plaintiff requests that she be permitted to publish the exhibit to the jury as an aid to cross-examination of defense witnesses during her case-in-chief and that the jury be permitted to decide the weight to assign the evidence.

Plaintiff asserts that Exhibit 2 is relevant to the issue of whether UPS officials regarded her as disabled for two reasons: (1) the exhibit helps to establish that plaintiff's perceived disability was a motivating factor in defendant's decision to not allow her to participate in TAW, and (2) the exhibit aids in establishing that defendant's purported reasons for not allowing her to participate in TAW were a pretext for discrimination. (*Id*. at 2-3). Specifically, plaintiff alleges that Exhibit 2 helps establish that UPS Business Manager Gary Kaufmann had a decision-making role in plaintiff's participation in TAW, and the document calls into question defendant's representations concerning requirements for participating in TAW.

Further, plaintiff asserts that the document is not hearsay. She alleges that Exhibit 2 is a "party admission provided by UPS as part of its verified discovery responses" and as such falls within the hearsay exception set forth in Fed. Rule Evid. 801(d)(2), and/or it is a business record that falls under the hearsay exception listed under Fed. Rule Evid. 803(6). (*Id*. at 5).

In response, defendant UPS argues that Exhibit 2 is irrelevant and is inadmissible as hearsay that is not subject to an exception. (Doc. 253). Defendant contends based on prior trial testimony and the language of the exhibit that plaintiff has misconstrued Exhibit 2. (*Id*. at 2-4). Defendant also argues that plaintiff has failed to establish the proper context or foundation for admission of the exhibit. (*Id*. at 4-5). Defendant asserts that plaintiff cannot establish that Exhibit 2 applied to TAW eligibility decisions within the Kentucky District. Defendant contends that even if the exhibit were to be admitted at trial, plaintiff should be precluded from misleading

the jury by misrepresenting the exhibit as a UPS "policy" applicable to TAW eligibility decisions in the Kentucky District.  (*Id*. at 5).

Upon review of Exhibit 2 and the parties' arguments, the Court finds that a ruling on the admissibility of Exhibit 2 is not properly made in advance of trial on a motion *in limine*.  It is clear from the motion *in limine* and defendant's response that the admissibility of Exhibit 2 involves substantive issues that cannot be resolved in an evidentiary vacuum.  Prior to hearing the evidence to be presented at trial, the Court is unable to determine whether the exhibit is admissible for the reasons stated by plaintiff.  Conversely, it is not clear that plaintiff will be unable to establish a foundation for the exhibit and that the exhibit is clearly inadmissible on all potential grounds.  *See Ind. Ins. Co.*, 326 F. Supp.2d at 846; *English Woods Civic Ass'n/Resident Cmty. Council*, No. 1:03-cv-186, 2004 WL 6043508, at *1; *cf. Luce*, 469 U.S. at 41. Accordingly, the Court will deny plaintiff's motion *in limine* without prejudice to plaintiff's right to offer Exhibit 2 into evidence at trial, subject to any objections defendant may raise at that time and a ruling by the Court on the admissibility of the exhibit.

### IV.  Defendant UPS's motion *in limine* (Doc. 252)

Defendant UPS seeks to preclude plaintiff from introducing at trial several categories of evidence, as well as several specific items of evidence.  Plaintiff filed a response to the motion *in limine* on August 29, 2013.  (Doc. 257).  The Court will address in turn each of the matters defendant seeks to exclude.

### A.  Alleged statements by purported non-decisionmakers regarding Watts's participation in the TAW

Defendant seeks to exclude alleged statements made by Center Manager Gary Kauffman, UPS Human Resources Representative Jim Knecht, and Kentucky District Labor Manager Peter Dames on the ground none of them played a decision-making role in Watts's participation in the

TAW program, so their alleged statements are irrelevant. (Doc. 252 at 3-6). Defendant relies on testimony presented at the prior three trials to argue that Kentucky District Workers' Compensation Case Management Supervisor Andy Germann and his successor, Jeremy Masters, were the only decisionmakers regarding Watts's participation in the TAW program.

Plaintiff's counsel represented to the Court at the Final Pretrial Conference held in this matter on September 3, 2013, that plaintiff does not intend to call Peter Dames as a witness at trial. Accordingly, the motion *in limine* as to alleged statements by Dames is DENIED as moot.

Defendant asserts that testimony presented at the three trials shows that Kaufmann played no role in deciding whether plaintiff satisfied the eligibility requirements for TAW until December 2004. (Doc. 252 at 4). In fact, however, the Sixth Circuit determined following the 2006 trial that the "record is mixed as to Kaufmanns's role." 378 F. App'x at 530. Accordingly, the motion *in limine* as to alleged statements by Kaufmann is DENIED.

Finally, defendant seeks to exclude a letter from Jim Knecht in the UPS Human Resources Department, which defendant contends contains stray remarks. (Doc. 252 at 3). UPS asserts that Watts agreed in the 2011 trial not to introduce this "statement" and withdrew Exhibit 7. UPS contends that the letter is irrelevant because it predates Watts's first release to return to work by nearly 18 months. (*Id*. at 5-6).

In response, plaintiff describes Exhibit 7 as a letter drafted by Knecht on July 27, 2001, stating that Watts would be scheduled to work five days per week/eight hours per day "if she is released to return to full duty with no restrictions." (Doc. 257 at 2, citing Plaintiff's Exh. 7). Plaintiff argues that the letter should be admitted "to the extent it substantiates Gary Abraham's testimony that UPS told Watts that she would not be permitted to return to work in the absence

of an unrestricted medical release.  Kaufmann denies making the statement, and this evidence challenges his credibility on that point."  (*Id*. at 2-3).

The Court is unable to discern from the parties' arguments and without hearing the evidence whether Exhibit 7 is inadmissible on the ground asserted by defendant.  The motion *in limine* is DENIED as to Exhibit 7.

### B.  Testimony of Dr. Wilkey

Defendant argues the Court should exclude portions of the videotaped deposition testimony of plaintiff's treating physician, Dr. Wilkey, which were previously excluded by the Court at the 2011 trial of this matter.  Defendant lists the specific portions of the testimony that were previously excluded and asks the Court to again exclude the testimony.  Plaintiff notes in response that UPS has not identified the specific basis for each objection.

It does not appear that Dr. Wilkey's videotape deposition is part of the record before the Court, and the parties have not provided the Court with a transcript of the videotape deposition that was presented at trial.  Accordingly, the Court is unable to review the objections made to the deposition testimony at trial and the previous rulings.  The parties therefore agreed at the Final Pretrial Conference to discuss this evidentiary matter and attempt to reach a resolution among themselves.  The Court will therefore reserve ruling on the motion *in limine* as it pertains to those portions of Dr. Wilkey's deposition testimony to which objections have previously been raised until the parties have had an opportunity to confer on the matter and, if the parties are unable to resolve the matter, pending the undersigned's review of the specific objections to Dr. Wilkey's deposition testimony and Magistrate Judge Merz's prior rulings on the objections.

**C.  Evidence related to previously litigated retaliation and gender discrimination claims**

Defendant seeks to preclude plaintiff from introducing evidence about engaging in protected activity or discrimination on the basis of her gender.  (Doc. 252 at 8-10).  Defendant specifically seeks to exclude evidence about plaintiff's gender; the gender of her alleged comparators; the fact that she filed a charge of discrimination (Plaintiff's Exh. 44); the fact that UPS has a policy against retaliation (Plaintiff's Exh. 1, p. 7); and the fact that she received a form letter regarding lack of documentation for a 72-hour absence from work (Plaintiff's Exh. 67, p. 1055).

Plaintiff does not object to refraining from introducing evidence related solely to her gender discrimination and retaliation claims.  However, she alleges that Exhibit 67 relates to her disability discrimination claim.  (Doc. 257 at 5).  The motion *in limine* is GRANTED to the extent defendant seeks to exclude evidence pertaining solely to plaintiff's sex discrimination and retaliation claims.  The Court will refrain from ruling on the admissibility of Exhibit 67 until the time of trial.

**D.  Surveillance evidence**

Defendant seeks to exclude a surveillance report prepared by UPS's third-party workers' compensation administrator, Frank Gates, on the ground it is inadmissible hearsay, it is irrelevant, and it is highly prejudicial.  (Doc. 252 at 10-11).  Defendant asserts it is irrelevant to Watts's requests to return to work under TAW because the report is dated July 19, 2002, well before Watts submitted her first release or made any attempt to return to work, and it was also submitted before Watts requested an accommodation under the ADA in March 2003.  (Doc. 252

at 11).  Defendant asserts Magistrate Judge Hogan previously excluded this report from the 2008 trial, finding it added nothing but "junk" to the case.[1]

Plaintiff asserts that UPS's surveillance of her is evidence of its discriminatory intent. (Doc. 257 at 6).  Plaintiff contends the surveillance is not hearsay to the extent it is offered to prove the state of mind and motivation of UPS's decision-makers, particularly Andy Germann. Plaintiff asserts that UPS placed plaintiff under surveillance on the same day UPS's doctor deemed her fit to return to work on a gradual basis and at the time she was engaged in a "work hardening" program intended to enable her to return to work.

At the 2010 trial of this matter, Magistrate Judge Hogan ruled on defendant's objection to the surveillance report (Plaintiff's Exh. 27).  (Doc. 198, pp. 2827-2831).  Magistrate Judge Hogan ruled that "the fact of surveillance" was admissible but that the surveillance report was not.  (*Id.*, pp. 2830-2831).  The parties have not offered any arguments to show that Magistrate Judge Hogan's previous ruling should be disturbed.  Accordingly, pursuant to the law of the case doctrine, the motion *in limine* is GRANTED as to the surveillance report.  The fact of surveillance is admissible.

### E.  Subjective thoughts and opinions of Drs. Wilkey and Vasi

Defendant seeks to exclude non-medical opinions of plaintiff's treating physician, Dr. Wilkey, which are included in Exhibits 41, 43, 46, 48 and 52.  (Doc. 252 at 11-12).  These statements are as follows:

- "Teresa has ongoing litigation with UPS with her ability to return to work hardening and a limited RTW."

- "We filled out several papers for her and hopefully this will help her get the assistance from UPS that she deserves."

---

[1] Defendant clarified at the Final Pretrial Conference that Magistrate Judge Hogan's ruling is found at Doc. 198, pp. 2830-2831.

- ". . . should her employer become more cooperative."

- "She is still involved in a lengthy battle with her employer over her injury."

- "This patient continues to have ongoing challenges to her BWC claim."

- "I have spent a better part of ½ hour filling out paperwork in regard to her employer."

- "Hopefully her employer will allow her to proceed with some type of treatment that she needs."

Defendant argues these statements at best convey the treating physician's underlying annoyance with UPS and should be excluded on the ground they are irrelevant and unduly prejudicial.  Defendant states that Magistrate Judge Hogan previously excluded from the testimony the treating physician's comments related to the litigation or plaintiff's dispute with UPS.  (*Id.*, citing Doc. 198 at 6-8; Doc. 179 at 70-74).

Plaintiff responds that Dr. Wilkey's subjective statements should be admitted because they are not hearsay and they document Dr. Wilkey's first-hand experience with the challenges UPS posed to plaintiff's repeated efforts to return to work.  (Doc. 257 at 6-7).

At the previous trial of this matter before Magistrate Judge Hogan, the Court sustained defendant's objections to comments in Dr. Wilkey's treatment notes that were unrelated to plaintiff's medical care.  Magistrate Judge Hogan made a preliminary ruling on the admissibility of the comments for purposes of the parties' opening statements (Doc. 198 at 8), and Magistrate Judge Hogan subsequently determined that only opinions by Dr. Wilkey "related to the medical treatment of the patient" were admissible and comments related to litigation with UPS were not admissible.  (Doc. 179 at 70-74).  There is no basis for disturbing Magistrate Judge Hogan's prior rulings in this regard.  Accordingly, the motion *in limine* is GRANTED as to comments in Dr. Wilkey's notes that are unrelated to his medical treatment of plaintiff and which concern plaintiff's litigation with UPS.

Defendant also seeks to exclude a lay opinion from another treating physician, Dr. Vasi, that plaintiff sought to introduce at the 2011 trial before Magistrate Judge Merz.  (Doc. 252 at 13).  Defendant asserts that plaintiff sought to introduce the following statement:  "Dr. Vasi doesn't want any more workers comp.  He say its to much of a hassle.  Having everyone call his office."  (*Id*., citing Doc. 231, Watts testimony, p. 16).  Defendant asserts that Dr. Vasi's opinion, which is hearsay, is not within the scope of his medical expertise and is not related to his treatment of plaintiff or her requests to work TAW.  Defendant asserts that Magistrate Judge Merz sustained UPS's objection to this statement in the 2011 trial.  (*Id*., citing Doc. 231 at 16).

Plaintiff does not address Dr. Vasi's opinion in her response.  The Court will therefore GRANT the motion *in limine* as to the opinion of Dr. Vasi regarding workers' compensation in accordance with Magistrate Judge Merz's prior ruling.

### F.  May 6, 2003 letter to EEOC

UPS seeks to exclude a letter that UPS's counsel submitted to the EEOC in response to questions posed by the EEOC investigator.  (Doc. 252 at 13, citing Exh. 39).  Defendant contends that the letter is an out-of-court statement offered for its truth, and as such is inadmissible hearsay.  (*Id*. at 14).  Defendant alleges that no witness can authenticate the letter or explain its contents.  UPS contends that Magistrate Judge Hogan previously excluded the letter as unauthenticated hearsay at the 2008 trial.  (*Id*., citing Doc. 170 at 93-95).

Plaintiff contends that the letter, which responded to the request that UPS supplement its position statement with information regarding TAW (Plaintiff's Exh. 39), is relevant because it fails to mention one of UPS's purported reasons for not permitting Watts to participate in TAW; thus, a reasonable juror could find that the omitted reason was a pretext for discrimination.

(Doc. 257 at 7-8). Plaintiff contends that the Court should find the letter is a "party admission" and that it can be used for impeachment purposes. (*Id*. at 8, citing cases).

Magistrate Judge Hogan determined at the 2008 trial that the letter was inadmissible because a letter from an attorney to the EEOC had nothing to do with what Germann, a decisionmaker in the case, knew or did not know at the time the letter was sent. (Doc. 170 at 93-95). Plaintiff has not provided any information that would indicate there is a basis for this Court to deviate from Magistrate Judge Hogan's prior ruling. The motion *in limine* is GRANTED as to Plaintiff's Exhibit 39.

### G. Evidence related to plaintiff's workers' compensation claim

Defendant seeks to exclude evidence related to the settlement and cost of plaintiff's workers' compensation claim on the ground such evidence is immaterial. (Plaintiff's Exhs. 37, p. 1408, Exh. 68). Defendant UPS argues that the cost of the claim is relevant only to the issue of retaliation, which has been decided against plaintiff. (Doc. 252 at 14-16). In addition, defendant argues that Exhibit 68 should be excluded because it was produced after discovery was closed and it concerns payments made long after plaintiff returned to work in December 2004. (*Id*. at 16).

Plaintiff has no objection to exclusion of evidence related to the settlement of her workers' compensation claim. (Doc. 257 at 9). Plaintiff argues that the cost to UPS of her workers' compensation claim is relevant to her claim that UPS regarded her as disabled. (*Id*.). She states that she intends to introduce evidence of the cost of the claim to show that UPS was motivated to not return her to work because it would cost too much money if her back was reinjured.

14

The cost of plaintiff's workers' compensation claim is not relevant to her claim that UPS regarded her as disabled and refused to allow her to participate in TAW for that reason. The motion *in limine* is therefore GRANTED as to evidence related to the settlement and cost of plaintiff's workers' compensation claim.

### H. Evidence related to plaintiff's lifting ability

Defendant seeks to preclude plaintiff from proceeding on the theory that she is substantially limited in the major life activity of lifting. (Doc. 252 at 16-17). Plaintiff states in response that she does not intend to assert that UPS regarded her as disabled with respect to any major life activity other than working. (Doc. 257 at 9). Accordingly, plaintiff will be limited to proceeding at trial on the theory that she is substantially limited in the major life activity of working.

### I. Evidence related to punitive damages

Defendant seeks to preclude evidence related to punitive damages, such as the size of UPS and its profits or net worth, on the ground such evidence is irrelevant because a jury has previously decided plaintiff's claim for punitive damages. (Doc. 252 at 17-19). Defendant contends that although a jury previously rendered special verdicts that were held to be inconsistent on UPS's sex discrimination and retaliation claims, the jury decided the "separate and distinct" issue of punitive damages and assessed $0 against UPS as punitive damages. (Doc. 252 at 18, citing Doc. 81, p. 3). Defendant states that when the case went to trial a second time on the sex discrimination and retaliation claims, Judge Weber refused to allow the punitive damages issue to be retried. (*See* Doc. 126 - Oct. 30, 2007 Order). Defendant asserts that plaintiff moved Magistrate Judge Hogan to reconsider Judge Weber's decision on punitive damages after reassignment of the case, which Magistrate Judge Hogan refused to do. (*Id.*,

15

citing Docs. 138, 152).  Defendant asserts that plaintiff failed to argue on appeal that Judge
Weber erred by declining to order a new trial on punitive damages.  (*Id.*, citing *Watts v. UPS*,
378 F. App'x 520, 535 (6th Cir. 2010)).  Defendant contends that Magistrate Judge Merz
recognized that the prior jury verdict, the prior rulings by Judge Weber and Magistrate Judge
Hogan, and plaintiff's failure to appeal the punitive damages issue militate against allowing
plaintiff to relitigate her claim for punitive damages.  (*Id.*, citing Doc. 223 at 2).

 In response, plaintiff refers the Court to her motion for a punitive damages instruction, in
which she alleges that no jury has ever had the opportunity to decide "whether UPS acted with
malice and/or reckless indifference to Watts' federally protected right to be free from disability
discrimination."  (Doc. 256 at 1).

 Upon a thorough review of the prior proceedings in this matter related to plaintiff's claim
for punitive damages, the Court exercises its discretion to deny defendant's motion *in limine* to
exclude any evidence of punitive damages.  The record demonstrates that plaintiff's claim for
punitive damages based on defendant's alleged violation of her substantive right to be free from
disability discrimination has never been presented to a jury.

 This case initially was tried to a jury before Judge Weber on three claims: (1) disability
discrimination, (2) sex discrimination, and (3) retaliation under Title VII.  At the conclusion of
plaintiff's case-in-chief, Judge Weber granted judgment as a matter of law on the disability
discrimination claim.  (Doc. 99; Doc. 108 at 15).  Following the close of all of the evidence, the
Court submitted special verdicts to the jury on sex discrimination and retaliation, backpay and
other damages, mitigation, and punitive damages, including the special verdict:

> If you have found that defendant UPS intentionally discriminated or retaliated
> against Plaintiff Teresa Watts in violation of federal and state law, do you find by
> clear and convincing evidence that punitive damages are appropriate?

(Doc. 81). The jury answered this special verdict, "No." (*Id.*). Judge Weber subsequently granted a motion for a new trial on the sex discrimination and retaliation claims, but he found that plaintiff was not entitled to a new trial on the issue of punitive damages. (Doc. 126; *see also* Doc. 204 at 54-57, 65-66).

The case was subsequently transferred to Magistrate Judge Hogan, who denied plaintiff's motion for reconsideration on the punitive damages issue. (Doc. 152). Magistrate Judge Hogan denied plaintiff's motion to alter or amend Judge Weber's prior ruling on punitive damages because Magistrate Judge Hogan found he did not have the authority to reconsider prior rulings of a district judge pursuant to 28 U.S.C. § 636. (*Id.*). Following a trial before Magistrate Judge Hogan on the sex discrimination and retaliation claims, a jury returned a verdict in favor of UPS on those claims. (Doc. 172).

Magistrate Judge Merz addressed punitive damages in his order on miscellaneous *in limine* matters issued on February 13, 2011:

> Because the issue of seeking punitive damages as part of the dismissed disability claim was available to be raised on appeal when Watts appealed the judgment as a matter of law and the issue was not raised, the Court declines to disturb Judge Weber and Judge Hogan's decisions that the punitive damages issue has been decided by the first jury and may not be litigated again. Although the jury did not have before it Watts's claim for regarded as disability liability, it had heard testimony on the conduct of UPS on which Watts now relies for punitive damages and expressly found no such liability. The Court believes that determination is conclusive.

(Doc. 223 at 2).

The undersigned agrees that the first jury to hear this matter found no liability for punitive damages on the part of UPS. (Doc. 81). However, as noted by Magistrate Judge Merz, the jury did not have the disability discrimination claim before it. Rather, the jury's punitive damages determination was limited to whether punitive damages were warranted for a violation

of plaintiff's rights under the federal and state laws prohibiting sex discrimination and retaliation. (*Id*.).  The jury did not consider whether to assess punitive damages against UPS for discriminating against plaintiff based on a perceived disability.  No subsequent jury has considered whether to assess punitive damages against defendant for engaging in disability discrimination.

Nor has any judge in this matter considered the merits of plaintiff's punitive damages claim as it relates to her substantive claim for disability discrimination.  Magistrate Judge Merz excluded evidence of punitive damages at trial based on prior rulings by Judge Weber and Magistrate Judge Hogan.  Although Judge Weber decided to grant a new trial on the sex discrimination and retaliation claims, he decided that the disability discrimination claim would remain out of the case and never addressed plaintiff's claim for punitive damages as punishment for a substantive violation of the ADA or the Ohio disability discrimination statute.  (Doc. 204 at 54-57, 65-66).  Magistrate Judge Hogan did not consider the merits of plaintiff's punitive damages claim, but instead he declined to alter or amend Judge Weber's ruling on punitive damages following reassignment of the case based on his finding that he lacked the authority to do so.  (Doc. 152).  Moreover, the disability discrimination claim was not before Magistrate Judge Hogan.  Finally, plaintiff's failure to raise the punitive damages issue on appeal is not determinative given that damages for disability discrimination, including punitive damages, was not a matter that was ripe for appellate review in view of Judge Weber's decision granting judgment as a matter of law on the disability discrimination claim.

Thus, the Court finds upon a review of the record that there has been no prior determination in this case on the issue of whether plaintiff is entitled to punitive damages in connection with her claim for disability discrimination.  The disability discrimination claim has

18

never been presented to a jury, and no judge has previously considered whether the evidence supports the assessment of punitive damages against UPS for discriminating against plaintiff on the basis of a perceived disability.  Accordingly, defendant's motion *in limine* as to evidence of punitive damages is DENIED.

### J.  Plaintiff's subjective beliefs

Defendant seeks to preclude plaintiff from introducing self-serving statements concerning her personal belief that UPS discriminated against her or regarded her as disabled.  (Doc. 252 at 19-21).  Plaintiff asserts that she will not offer her own view as to whether she was the victim of discrimination.  (Doc. 257 at 10).  The motion *in limine* on this evidentiary matter is DENIED as moot.

### V.  Plaintiff's motion in limine relating to grievance proceedings (Doc. 258)

Plaintiff seeks to exclude the admission of "exhibits and testimony related to a steward's grievance and joint grievance committee decision (Defendant's Exhibit DX 509)" on the basis that any probative value of such evidence is substantially outweighed by the danger of jury confusion.  (Doc. 258).  Defendant opposes the motion and argues that Defendant's Exhibit DX 509 is probative of plaintiff's claim of pretext.  (Doc. 266).  Defendant contends that plaintiff will likely argue at trial, as she has in the past, that UPS manufactured the 30-day eligibility requirement for TAW and that the decision of the grievance panel, which included members of the union and UPS and which denied plaintiff's grievance, makes it more likely that UPS applied the TAW eligibility requirements consistently with the company's and the union's mutual understanding of the CBA.

The Court denies the motion in limine at this juncture.  The undersigned lacks any information on the specific issues addressed at the previous grievance proceeding or the

parameters of the actual decision.  Neither party has submitted a copy of Defendant's Exhibit DX 509 and the Court is unable to discern what it encompasses.  The Court notes that evidence and testimony about the grievance process and outcome were admitted by Judge Weber and Magistrate Judge Hogan in previous trials.[2]  Magistrate Judge Merz ruled pre-trial that "[a]ny testimony by Peter Dames or another witness to the effect that the grievance panel denied Ms. Watts' grievance because they determined that UPS did not violate the collective bargaining agreement will not be presented to the jury because of the likelihood it would confuse the jury on the ultimate issue it will need to decide" (Doc. 223); however, Magistrate Judge Merz later admitted Defendant's Exhibit DX 509 at trial following plaintiff's representation in opening statement that UPS fabricated the 30-day rule.  (Doc. 244, transcript PageID 3740).  In addition, both parties questioned witnesses about the grievance process, and  Defendant's Exhibit DX 509[3] was later admitted without objection by plaintiff.  (Doc. 243, transcript PageID 3713).

Given the previous rulings on this evidence, and without knowing what materials are contained in Defendant's Exhibit DX 509 or the parameters of the grievance issues and decision, the Court declines to rule that all grievance-related testimony and materials are inadmissible at this time.

### VI.  Plaintiff's motion for a punitive damages instruction (Doc. 256)

Plaintiff requests an instruction on punitive damages on the ground that the issue of malice/reckless indifference in the context of her right to be free from disability discrimination has never been decided by a jury.  (Doc. 256).  Defendant opposes plaintiff's request for the reasons stated in its motion *in limine*.  (Doc. 262).

---

[2]Magistrate Judge Hogan denied a similar motion in limine by plaintiff before the 2008 trial, finding that evidence of the prior grievance procedure was relevant to defendant's interpretation of the CBA and on the issue of pretext.  (Doc. 154 at 2).

[3] Defendant's Exhibit DX 509 was designated as DX 598 at the 2011 trial.

Whether plaintiff is entitled to a punitive damages instruction is dependent upon whether plaintiff presents sufficient evidence at trial to show that UPS "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] federally protected rights[.]"  *See* 42 U.S.C. § 1981a(b)(1).  Accordingly, the Court will reserve ruling on the motion for a punitive damages instruction pending presentation of all the evidence to the jury.

### IT IS THEREFORE ORDERED THAT:

1.  Defendant's motion to strike plaintiff's motion *in limine* and plaintiff's memorandum in opposition to defendant's motion *in limine* (Doc. 260) is DENIED.

2.  Plaintiff's motion *in limine* regarding the publication of Plaintiff's Exhibit 2 to the jury at trial (Doc. 251) is DENIED without prejudice to plaintiff's right to offer the exhibit into evidence at trial.

3.  Defendant's motion *in limine* (Doc. 252) is DENIED as moot with respect to alleged statements by Peter Dames and plaintiff's personal beliefs as to whether she was discriminated against.

4.  Defendant's motion in limine is DENIED with respect to the following evidence: (1) alleged statements by Gary Kaufmann; (2) Plaintiff's Exhibit 7; (3) evidence pertaining solely to plaintiff's sex discrimination and retaliation claims, except that the Court will refrain from ruling on the admissibility of Exhibit 67 until the time of trial; and (4) evidence as to punitive damages.

5.  Defendant's motion *in limine* is GRANTED with respect to the following evidence: (1) the surveillance report (Plaintiff's Exh. 27); (2) statements contained in Dr. Wilkey's notes that are unrelated to his medical treatment of plaintiff and which concern plaintiff's litigation with UPS; (3) the lay opinion of Dr. Vasi regarding workers' compensation; (4) evidence pertaining to the

cost and settlement of plaintiff's workers' compensation claim; and (5) the May 6, 2003 letter from UPS's counsel to the EEOC (Plaintiff's Exh. 39).

6.  The Court reserves ruling on the motion *in limine* as it pertains to portions of Dr. Wilkey's videotaped deposition to which objections have previously been raised.

7.  Plaintiff's motion in limine relating to grievance proceedings (Doc. 258) is DENIED.

8.  The Court reserves ruling on plaintiff's motion for a punitive damages instruction (Doc. 256).


Date:  9/5/2013                              ____s/Karen L. Litkovitz_____
                                             Karen L. Litkovitz
                                             United States Magistrate Judge